### The People of the State of Illinois, Defendant in Error, v. John W. Joyce, Plaintiff in Error.

#### Gen. No. 5244.

1. CRIMINAL LAW—*power of court to grant continuance.*  It is within the sound discretion of the trial judge to delay a criminal trial because of the inability of the state's attorney to procure the attendance of witnesses.

2. CRIMINAL LAW—*when peremptory challenge cannot be exercised as a matter of right.*  After a juror has been accepted by both sides, a peremptory challenge cannot be exercised by the defendant as a matter of right, but the court may, in the exercise of a sound discretion, permit it to be done.

3. DRAM-SHOPS—*when refusal to grant bill of particulars not reversible error.*  Held, in a prosecution for the unlawful selling of intoxicating liquor in anti-saloon territory, that the refusal of the court to order the People to supply a bill of particulars was not reversible error.

4. DRAM-SHOPS—*what record competent in prosecution for unlawfully selling intoxicating liquors in anti-saloon territory.*  Held, that the particular record in this case kept in the office of the collector of internal revenue, was competent, and when considered in connection with the statutes under which it was made and kept, tended to show that a special tax stamp was issued to the defendant permitting him to sell liquor at retail at a certain place designated in such record.

5. DRAM-SHOPS—*what instruction proper in prosecution for unlawfully selling intoxicating liquor in anti-saloon territory.*  An instruction in such a prosecution is proper which is in the language of the statute.

6. EVIDENCE—*how record may be proven.*  A record of a public official may be legally proven by an examined copy thereof.

7. EVIDENCE—*what records competent.*  In order to permit the contents of a record kept by a public official to be proved, it is not

necessary that a statute be shown requiring such records to be kept; it is sufficient if the same are kept in the discharge of a public duty.

Prosecution for unlawful sale of intoxicating liquor. Error to the County Court of Winnebago county; the Hon. LOUIS M. RECK-HOW, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed March 11, 1910.

J. E. GOEMBEL, for plaintiff in error.

HARRY B. NORTH, for defendant in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

In the County Court of Winnebago county, plaintiff in error was convicted under the first count of an information charging him with the unlawful sale of intoxicating liquor in the town of Rockford, while it was anti-saloon territory. He was fined $100 and sentenced to imprisonment in the county jail for 20 days and has sued out this writ of error to review the judgment.

The information was filed on June 22, 1909. On July 9 a venire was issued for thirty persons to serve as jurors in said court, which venire was returnable on July 12. On the last named date this case was called for trial and after a motion to quash the information had been denied, of which ruling no complaint is now made, plaintiff in error challenged the array and moved that the venire be quashed, and filed in support of said challenge and motion his own affidavit and that of his attorney. These affidavits set up at great length a certain former prosecution against plaintiff in error for the same offense, which it is alleged ended in a *nolle prosequi* on June 22, 1909, just before the filing of the information in this case and at a time when the regular panel of jurors for that term of said court were upon their second week of service. It is not shown or contended that anything

which had occurred in that first prosecution was a bar to this proceeding, and if it had been, it could only be offered in evidence as a defense upon the trial and would furnish no ground to challenge the array or to quash the venire. Therefore what occurred upon the former trial is immaterial here. The affidavits stated that immediately upon the filing of this information, the state's attorney asked the court to set the trial for July 12 and gave as his reasons for dismissing the former suit and for requesting that the trial of this case be set for July 12 that he was unable to secure the attendance of the witnesses for the suit; that plaintiff in error, through his attorney, then demanded an immediate trial, and that the regular panel of jurors were then present, and the court did not proceed to try this case immediately, but discharged the regular panel, and on July 9 ordered the special panel above mentioned. It was within the sound discretion of the court to delay the trial because the state's attorney had been compelled to dismiss the former proceeding on account of his inability to procure the attendance of his witnesses. Again, the record before us is certified to be a complete transcript of all the proceedings had in the court below. The record does not disclose any such demand for an immediate trial, and it discloses no plea by plaintiff in error till July 12. He was not entitled to an immediate trial before he had pleaded to the information. But suppose it were true that the court erred in denying him an immediate trial and in discharging the regular panel. That action by the court did not acquit him of the charge. It cannot be contended that the State was without power thereafter to place plaintiff in error upon trial. The next term of the court would not be held till November. If plaintiff in error conceived that he was entitled to a continuance, he should have made a motion therefor. After the regular panel had been discharged, the manner of the trial was controlled by the same considerations discussed by us in

People v. Ferguson, 150 Ill. App. 387, and the ruling of the court was correct for the reasons there stated.

Plaintiff in error entered his motion for a bill of particulars, supported by his own affidavit, and that motion was denied. This·refusal was not erroneous, for the reasons given by us in People v. Brown, 150 Ill. App. 365, and upon the authorities there cited, to which may be added People v. Poindexter, 243 Ill. 68, and People v. Weil, 243 Ill. 208. Moreover, plaintiff in error now claims that he was ready for trial on June 22, and if he was ready for trial then without a bill of particulars, he must have been equally ready on July 12. Again, in his challenge to the array he set up that he had been previously tried for the same offense, twice in the preceding case, once in the Circuit Court and once in the County Court, each trial resulting in a disagreement of the jury, and that he had entered upon a third trial and had a jury partly impaneled when the state's attorney abandoned the prosecution on account of his inability to procure the attendance of the witnesses for the State. After these two trials for the same offense, it is idle to contend that he needed a bill of particulars. But still further, the names of eight witnesses were endorsed on the back of the information. This was filed twenty days before the application· for a bill of particulars was made. Plaintiff in error had abundance of time in which to see these witnesses. No other witnesses were called by the prosecution, except that a witness was called to prove an examined copy of a record, in place of a witness named on the back of the information by whom that proof was to have been made. No injury was done to plaintiff in error by the denial of a bill of particulars.

During the impanelment of the jury plaintiff in error examined Gust Carlson and thereafter challenged him for cause, and the court overruled the challenge. The only cause suggested was that it was doubtful whether he sufficiently understood the meaning of

some words likely to be used upon the trial. We are of opinion that his examination disclosed sufficient intelligence to make him a competent juror. The State accepted a panel of four jurors, including one Taylor, and tendered them to the defense. The defense accepted Taylor and another, and excused two others and selected two more, and tendered them to the State. The State then excused the two so tendered by the defense and tendered two more in their place. Before the defense had accepted the two men last tendered by the State to make up the first panel of four, it peremptorily challenged Taylor. That challenge was overruled. The position of plaintiff in error is that until four men had been accepted on both sides, he had a right to challenge peremptorily any of the jurors whom he had previously accepted. While this question is perhaps not free from doubt, yet we are disposed to hold that under Sterling Bridge Co. v. Pearl, 80 Ill. 251, and Mayers v. Smith, 121 Ill. 442, the court was not required to permit a peremptory challenge of a juror after he had been accepted by both parties, though the court in the exercise of a sound discretion might have done so. If plaintiff in error had shown to the court that after he accepted Taylor information had reached him for the first time which, if he had known thereof before he had accepted him, would have caused him to challenge him peremptorily, no doubt it would have been within the power of the court to grant the request, as held in Belt v. People, 97 Ill. 461. The court gave an opportunity for such a showing, but it was not made. Plaintiff in error had accepted Taylor when tendered by the People. He had afterwards tendered Taylor to the People in the reconstructed panel of four. We conclude he could not thereafter challenge Taylor peremptorily. We find no reversible error in the impaneling of the jury.

Plaintiff in error contends that the proof that the town of Rockford was anti-saloon territory at the time

of the sales of intoxicating liquor complained of was incompetent and insufficient. It was of the same character as the proof on that subject discussed by us in People v. Walker, *ante,* p. 3, in which we file an opinion this day, and for the reasons there stated the objection is not well taken.

The court admitted in evidence an examined copy of a record of taxpayers in the office of the collector of internal revenue for the first district of Illinois, which district it was proved included Winnebago county, which record under the heading of various columns contained the name "J. W. Joyce;" business, retail liquor dealer; place, 201 South Main Street, Rockford; date from, August, 1908; amount of tax, $22.92; date of payment, August 27; serial number of stamp, 94513. It is argued that it was error to admit this examined copy. It was sufficiently proved that it was an examined copy of a record kept in that office. It is doubtful if plaintiff in error has any objection that raises the questions argued, but counsel for both parties have argued the case as if the competency of this evidence is raised by the record and we therefore proceed to consider that question.

Chapter 51 of the Revised Statutes, relating to evidence in civil cases, contains provisions for the introduction in evidence of the statutes of the United States and of the several states, and of the decisions of their courts, and of the papers, entries and records of courts, and of the records and ordinances of cities, villages, towns and counties, and of the papers, entries and records of corporations, and of matters of record in any land office of the United States. Nothing in that chapter, or in any statute of this State to which our attention has been called, authorizes the introduction in evidence of the records in the office of the collector of internal revenue of the United States. But the common law rule in reference to the introduction of public records generally is not abrogated by our chapter on evidence. That rule is thus stated in 1 El-

liott on Evidence, section 405: "Books and documents of a public nature and of public authority are admissible in evidence, in a proper case, when there is an official duty to make the record. This rule includes official registers or records kept in a public office in which the officer is required, either by statute or the nature of the office, to write down particular transactions occurring in the course of his public duties and under his personal observation, and it makes no difference whether the entries are made by him in person or not, for it is sufficient if they are made under his direction as part of the duties of the office. Or, as stated in substance by Stephen, an entry in any record, official book, or register kept in this country, or at sea, or in any foreign country, stating a fact in issue or relevant thereto, and made in proper time by any person in the discharge of any duty imposed upon him by the law of the place in which such record, book or register is kept, is admissible in evidence." In section 406 their admissibility is placed in part upon the ground that they are kept for public reference by one who is under some duty to keep them. All of chapter 18 of 1 Elliott on Evidence, from sections 404 to 420, inclusive, illustrates the force and application of this rule, and many cases are there cited. 10 Encyc. of Evidence, 716 to 753. The rule has been applied in this State. Lurton v. Gilliam, 1 Scam. 577; Hiner v. People, 34 Ill. 297; C. & N. W. Ry. Co. v. Trayes, 17 Ill. App. 136. A similar rule of evidence is recognized and applied in City of Joliet v. Blower, 155 Ill. 414. In Evanston v. Gunn, 99 U. S. 660, it was held that a record showing the direction and velocity of the wind and the falling of snow at a certain date, kept by a person employed by the United States Signal Service at Chicago, was admissible in evidence under the rule making competent "Official registers or records, kept by persons in public office, in which they are required, either by statute or by the nature of their office to write down particular transactions oc-

curring in the course of their public duties or under their personal observation.'' It was held that to entitle them to admission it was not necessary that a statute require them to be kept, but it was sufficient that they were kept in the discharge of a public duty. Reynold's Stephen's Digest of Evidence, Article 34. Does the record, an examined copy of which was introduced in evidence, come within this rule? In considering the laws under which this record was kept, we shall refer to volume 3 of Federal Statutes Annotated. Section 3232 forbids any person from carrying on certain kinds of business until he has paid a special tax therefor. Section 16, from the act of February 8, 1875, given under section 3242, names retail liquor dealers among those who must pay said special tax. Section 3242 prescribes penalties for the violation of these provisions. Section 3238 provides for special tax stamps and provides that section 3312, 'requiring the preparation and issue of stamps for distilled spirits, etc., shall extend to and include stamps for special taxes. Section 3312 requires that such stamps shall be engraved in book form and issued by the commissioner of internal revenue to the collectors in the several districts; that each stamp shall have an engraved stub attached thereto, with a number thereon corresponding with an engraved number on the stamp; that the stub shall not be removed from the book, and that there shall be entered on each stub such memoranda of the contents of its corresponding stamp as shall be necessary to preserve a perfect record of the use of such stamp when detached. Section 3239 requires every person engaged in a business made liable to a special tax, except tobacco peddlers, to place and keep conspicuously in his place of business all stamps denoting the payment of said special tax, and a penalty is provided for a violation thereof. Section 3240 is as follows: ''Each collector of internal revenue shall, under regulations of the Commissioner of Internal Revenue, place and keep con-

spicuously in his office, for public inspection, an alphabetical list of the names of all persons who shall have paid special taxes within his district, and shall state thereon the time, place and business for which such special taxes have been paid." It will therefore be seen that the record in the office of the collector of internal revenue for the first district of Illinois is a public record, which it was the official duty of that officer to make, and which was required by law to be kept for public inspection. It was therefore such a record as is contemplated by the common law rule above stated; and at common law such a record may be proved by an examined copy.

Was this record pertinent to the issue in this case? Section 17 of the Act of 1907 concerning anti-saloon territory concludes as follows: "The issuance of an internal revenue special tax stamp or receipt by the United States to any person as a wholesale or retail dealer in liquors or in malt liquors at any place within territory which, at the time of the issuance thereof, is anti-saloon territory, shall be *prima facie* evidence of the sale of intoxicating liquor by such person at such place, or at any place of business of such person within such territory where such stamp or receipt is posted, and at the time charged in any suit or prosecution under this Act: *Provided,* such time is within the life of such stamp or receipt." Does this record tend to prove the issuance of an internal revenue special tax stamp to plaintiff in error as a retail dealer in liquors in the town of Rockford? The tax stamp recited in said record took effect in August, 1908, and pursuant to section 53 under section 3237 in said volume 3 of the Federal Statutes, Annotated, it necessarily covered the period till and including the last day of June, 1909. The information and the proof related to dates within that period. The record gave the name as "J. W. Joyce," instead of "John W. Joyce," but it gave the place of business as "201 South Main street, Rockford," and the proof shows that

that place was the place of business of plaintiff in error. It is the act of the internal revenue collector in issuing an internal revenue special tax stamp which is made evidence of the sale of intoxicating liquor by the person named and at the place named. The court may take judicial notice that in the regular course of business, the paying of the money is solely for the purpose of obtaining the Federal stamp, and that the payment and the issuance of the stamp are intended to be contemporaneous acts. The statute above referred to required a number to be placed on the stub corresponding with the number on the stamp, and required that the stub should not be removed. These provisions were in relation to distilled spirits, but under section 3238 these provisions were extended to all special taxes imposed by law, including the special tax for a retail liquor dealer. When therefore a special tax number is found on this record, it means that that corresponds with the number of the stamp issued to the person named, and therefore that such a stamp has been issued. We conclude that this record, when considered in connection with the statutes under which it is made and kept, means that such a special tax stamp was issued to plaintiff in error, permitting him to sell liquor at retail at 201 South Main street, Rockford, from August 27, 1908, to and including June 30, 1909. Similar records were held competent to prove similar allegation in State v. Gorham, 65 Me. 270; State v. Wiggin, 72 Me. 425; State v. O'Connell, 82 Me. 30; State v. Davis, 69 N. H. 350; State v. White, 70 Vt. 225, and Commonwealth v. Brown, 124 Mass. 318.

It is contended that the first instruction given at the request of the People is substantially like the instruction disapproved in People v. Johnson, 150 Ill. App. 424, and that it assumes that sales have been proven beyond a reasonable doubt. On the contrary, this instruction contains the very element omitted in the instruction there referred to, for it begins by requir-

ing the jury, first, to believe from the evidence beyond a reasonable doubt that defendant sold intoxicating liquor in anti-saloon territory, as charged, before the principles therein stated are to be applied. People's instruction No. 4, complained of, defines intoxicating liquor in the language of the last sentence of section 1 of the Act concerning anti-saloon territory, and it is not erroneous to give the jury the law in the words of the statute itself. It is contended that People's instruction No. 5 leaves it to the jury to determine what is meant by anti-saloon territory. As the proof was undisputed that the town of Rockford, within which these sales were made, was anti-saloon territory at the time in question, no harm was done to plaintiff in error. People's instruction No. 7, while unnecessary and unnecessarily long, yet is a correct statement of the law applicable to this case. People's instruction No. 8 related to the effect of the special tax stamp as evidence. It is contended that it should have required the posting of said stamp in the place of business of plaintiff in error, under People v. McBride, 234 Ill. 171. That case does not decide that proof of posting is necessary where the sale is at the place named in the stamp.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*