## HENRY S. HINER

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. INDICTMENT — *good and bad counts — verdict.* Where there are several counts in an indictment, some good and some faulty, and a general verdict of guilty is found, it will be referred to the good counts unless it otherwise states, and it will sustain a judgment of conviction.

2. PUBLIC HIGHWAY — *survey and plat.* The survey and plat of a public road is evidence of its location, but is not conclusive; but like the field notes of the government surveys, parol evidence may be received to show, that the road was actually located differently from the calls in the survey of the road.

3. JURY — *their duty as to the evidence.* It is the duty of a jury to weigh and consider conflicting evidence, and give it such weight as it deserves; and having found a verdict it will not be disturbed unless strongly against its weight.

WRIT OF ERROR, to the Circuit Court of Stark County; the Hon. A. L. MERRIMAN, Judge, presiding.

This was a prosecution for obstructing a public highway, in the Stark Circuit Court.

At the November term, A. D. 1861, of the Stark County Circuit Court, an indictment was found against the plaintiff in error, containing three counts.

The first count charges that the plaintiff in error " did unlawfully, with force and arms, erect and build a fence, thereby, then and there obstructing the public road, and then and there, by said fence and said obstruction rendering the said public road inconvenient to pass."

The second count same as the first.

And the third count charges that the said defendant "did then and there unlawfully, with force and arms, erect and build a fence, thereby, then and there obstructing the said public road. And the said Henry S. Hiner, from the said sixteenth day of August in the year of our Lord 1861, *continued said obstruction in and across said public road until the day of this indictment, thereby during all that time rendering the said public road inconvenient to pass.*"

The plat of the road made and returned at the time it was surveyed and located calls for the line of the road on the south line of the southwest quarter of section thirteen, township twelve north, in range five east of the fourth principal meridian. The controversy before the jury was as to the location of the section line, upon which the road had been located. On the trial there was a large amount of testimony introduced on both sides which was conflicting and contradictory in its character. The jury returned a verdict of guilty; the defendant entered a motion in arrest and for a new trial which was overruled, to which defendant excepted. The court rendered a judgment for a fine on the verdict.

The court on the trial below, amongst others, gave these instructions:

4. "The monuments or corner run to by the surveyor in surveying the road, and the staking and laying out of the road, must always control in determining the location of the road; and the field notes and plat returned by the surveyor are but

matter of description which serve to assist in determining the place where the road was actually located."

5. "In determining the boundaries of land in this State, the original mounds or monuments must govern as to the location of the line, although the line may, by following such original mounds, be made a crooked or deflected line. And if the original mounds have once been discovered and recognized by a county surveyor as original corners, a county surveyor who might be subsequently elected, would have no right to disregard such original corners and establish a different line, though such a line might be a straight one."

6. "If the jury believe, from the evidence, that Berfield actually surveyed and located the road on the deflected line, under proper authority, that would be the true line of the road, although the true section line might be south of that. The actual survey and staking and viewing of the road, upon the ground where it is laid, constitutes the location, and the markings and lines made by the surveyor and viewers, upon the plat, do not constitute the location of the road, provided the road was actually opened upon such line."

"The fifth instruction as asked by defendant: Though the viewers and surveyors may, in fact, have traveled or run upon a deflected line, over the defendant's land, yet if they did not mark the route by stakes, monuments or other visible signs, showing where they laid the road, and in their report and survey they state they viewed and located the road according to the plat and survey, then the plat and survey will show the true route and location of said road, The report of road viewers, plat, surveys and field notes of the surveyor in viewing and locating roads, at the time the road in controversy was alleged to have been laid out, were required by law to be returned into the office of the clerk of the county commissioners' court; and they thereby became a part of the public records of the county, for the use of the public. And all such reports, plats and surveys, and other records relating to the road in controversy, as have been used in evidence in the case, are proper evidence of the facts stated in them, and cannot be contradicted or

destroyed by verbal evidence of witnesses; nor can the same be explained except there is doubt or uncertainty as to the meaning of the language of the same, or omissions therein. And the jury are instructed to disregard all evidence which is in conflict with the record evidence admitted in this case."

Which the court gave with this modification:

" This instruction is given as qualified by the instructions given for the prosecution, in reference to the question of actual location of the road."

To the giving of which instructions for the people, and the modification of defendant's fifth instruction, defendant, at the time, excepted.

Messrs. PUTERBAUGH and INGERSOLL, for the plaintiff in error:

I.   Although it has frequently been decided that while in an indictment containing several counts, one count may be fatally *defective*, yet if there is a good count, a general verdict of guilty will be sustained.   But in this case the last count does not describe an indictable offense, and the verdict being general, it is impossible to tell whether the jury found the plaintiff in error guilty of obstructing, or continuing to obstruct, a road.

Continuing to obstruct a road is not an indictable offense. *Lowe* v. *People*, 28 Ill. 518.

Continuing to obstruct a road, and obstructing a road, are distinct offenses, so that the doctrine laid down in the case of *Curtis* v. *The People*, Breese, 200, does not apply.

The greater offense of obstructing a road, does not include the lesser offense of "continuing to obstruct a road," because the offense of " continuing to obstruct a road " is not indictable.

II.   It is not contended that the road is legally established by prescription.   The claim of dedication is not sustained by the evidence.   Christopher Hiner testified that he was present when the defendant first fenced his land, and heard defendant say that he would set his fence where he did for the present, and that as soon as he was able he would have the lines

run and set the fence where it ought to be. Four years before the trial, the defendant forbid the pathmaster working the road any where along his line, and contended that the road did not run in the right place. And while defendant was pathmaster, he refused to work the road for the same reason. And the whole testimony rebuts any conclusion that the defendant ever intended to dedicate any part of his land for a public road, except along the section where he insisted that the road was established.

III. The court erred in giving the *third, fourth* and *sixth* instructions asked by the people, and in modifying the *fifth* instruction asked by the defendant below. The best evidence of the location of the road in question should govern. We insist that the original survey and plat of the road, filed and recorded according to law, and the records of the County Commissioners' Court, establishing the same according to the survey and plat, are the best evidence of where the road in question was legally laid out and established, and all parol evidence to vary or contradict this record, plat and survey, should have been excluded and disregarded.

The court seems to have been governed in giving the instructions by the decisions of the Supreme Court in the cases of *Eyman* v. *The People*, 1 Gilm. 4; *Nealy* v. *Brown*, id. 10; *Dumoss* v. *Francis*, 15 Ill. 543; in which this court held, that "if a road is used and traveled by the public as a highway, and is recognized and kept in repair as such by the county commissioners and supervisors, whose duty it is by law to open and repair public roads, proof of these facts furnishes a legal presumption, *liable to be rebutted*, that such road is a public highway."

IV. The record does not show that the offense charged, was proved to have been committed in Stark county.

V. The statute provides that the indictment should be found within one year and six months from the time of committing the offense. This indictment was found on the 7th day of November, 1861, and was tried on the 19th day of May, 1863. By the peoples' own showing, the obstruction was placed in the

road in May, 1860, and remained there until after the finding of the indictment. *O. Baker*, a witness called by the prosecution, twice distinctly states that "*The obstructions were placed there two years ago last May.*" "This obstruction remained there from May until after court set last fall." "Two years ago last May," from the time of the witness testifying, would fix the time of the obstructing at May, 1860. The witness does not state what time in May the obstruction was placed there, but the court must fix the time most favorably to the accused. And if the obstruction was placed there before the 7th of May, 1860, the offense was barred by the statute of limitations.

Mr. M. SHALLENBERGER for defendant in error:

I. In this case, the indictment contained three counts; the 1st and 2d for obstructing the highway, and the 3d, for obstructing and continuing the obstruction. It is admitted that the first and second counts are good counts, and claimed by plaintiff in error that the third is bad. The verdict was a general verdict. There is no principle of criminal law better settled than that a general verdict, upon an indictment containing one good count, will be sustained. There is no distinction, either in the authorities or upon principle, where the count is held bad because it states defectively, an indictable offense, or where it states an offense which is not indictable. Each count stands alone and states a separate charge; and if one is good and the remainder bad, from any cause, a general verdict will be sustained. *Dunham* v. *The State*, 1 Black. 33; *People* v. *Curling*, 1 Johns. 320; *State* v. *Hooker*, 17 Vt. 658; *People* v. *Olcutt*, 2 Johns. 311; Butman's case, 8 Greenl. 113; *Curtis* v. *People*, Breese, 236; *Townsend* v. *People*, 3 Scam. 320; *Holliday* v. *People*, 4 Gilm. 111.

The court is particularly referred to the case in 8 Greenleaf, as a case where the bad part of the indictment was a statement of an offense not indictable. It is contended however, by defendants in error, that the third count is good. It states that plaintiff in error obstructed the highway — and further, that he

continued the obstruction. If continuing the obstruction is not an indictable offense, that part of the count should be rejected as surplusage, and the remainder would be a good count. The case in the 8th Greenleaf is a case in point, where a general verdict of guilty, was sustained on such a count. The case in the 28th Ill. is not like this. In that case the count charged a *continuing* of the obstructions simply. If the continuing clause in the count in this case is stricken out, the remainder is a good count for obstructing a road. Arch. Crim. Pl. 42; Whart. Am. Crim. Law, 228 and Notes.

2. It is stated by plaintiff in error, in his fourth point, that no *venue* was proved. The evidence, if it shows anything, shows an obstruction of a highway in Stark county, Illinois. All the testimony shows a highway was obstructed, running between sections 13 and 24, in township 12 north, range 5 east, and the plat and survey introduced by the plaintiff in error show that the road in question is located in Stark county, Illinois; and all the evidence shows it was this road which was obstructed, at a point between the above named sections.

3. The fifth point made by the plaintiff in error is not sustained by the testimony. As a matter of fact the bill of exceptions does not correctly state Baker's testimony. It was prepared, as the record shows, in vacation, and the mistake was not perceived. What he really said was: "Two years ago *this* May." The evidence of the other witnesses, however, sets the matter at rest. Mr. White, who was present when Hiner placed the obstruction, and conversed with him on the subject, says it was placed there on the 3d of May, 1861; that it was afterwards torn down and replaced a half dozen times, and that the last time it was replaced by Hiner was in harvest of that year. Mr. Twiss also states the obstruction was made "two years ago," which would be May, 1861.

4. The question of dedication must be determined by the jury, from the acts and acquiescence as well as the statements of the plaintiff in error. *It is simply a question of intention,* and the jury might well determine that the *silence and acquiescence* of Hiner for seven years in the use of this road by the

public, and his own work upon it, near the disputed corner, during that time, with a full knowledge of all that was being done, amounted to a dedication. At all events, it was a question of fact to be determined by the jury, and the court will not reverse the judgment if there is any evidence in the case which supports the proposition of dedication. *Louk* v. *Woods*, 15 Ill. 263; 17 id. 369; 2 Greenl. Ev. § 662, and notes; *Dimon* v. *People*, 17 Ill. 422; *Proctor* v. *Lewiston*, 25 id. 153.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the court:

No objection is perceived to the first and second counts of the indictment. Even if the third is defective, which we deem unnecessary to determine, the good counts will support the judgment. The rule is of uniform application, that a conviction on a general verdict will be sustained, although some of the counts are faulty, if there be one good count in the indictment. The first and second counts being good, they will sustain this general verdict and the judgment of conviction. We must presume, unless the contrary appears, that the conviction was under the good, and not under faulty counts.

The principal question, however, in this case, relates to the location of the road in controversy. The dispute seems to be, where the road was actually located. The plat of the road calls for the line, dividing the government lands, as made by its surveyors. The plat made and returned by the commissioners, when they located it, is unquestionably legitimate evidence, but is not conclusive as to where the place, or precise line, may be found. Like the field notes of the government surveys, they always control, unless it is made to appear that lines and corners are different from the calls of the field notes.

When the original line or corner is found, and it conflicts with the calls of the field notes, the former must govern. The survey, as it was actually made, is the thing, and the field notes are designed to describe and represent it, and a misdescription of the actual survey as made, cannot alter or change the survey itself. In the absence of evidence to show that the

lines and corners were actually placed differently from the calls in the notes, they must govern. So with the map or plat returned by the commissioners. The field notes describe the lands surveyed, and the plat describes the ground appropriated for public use, and the design of both is to find the particular tract or strip of land, when further occasion shall require. Nor does this plat differ from the notes of the survey of any other tract of land.

The issue before the jury for trial was, whether appellant had obstructed a public highway. And to determine that fact, it was necessary to find the precise line or place where the commissioners actually located the road, and then determine whether the obstruction was on the ground over which it was located. It is not disputed, that a road was located near the place claimed; but it is denied that it was on the line of the road. On this question many witnesses were examined, the plat of the road was introduced, and other surveys were referred to by witnesses; and, as might be supposed, this evidence does not all harmonize. It was, therefore, the province of the jury, to carefully consider the whole evidence, and determine where the road was located, and determine whether it was obstructed as located. After a careful examination, we are of the opinion, that the evidence warrants the conclusion at which the jury have arrived. At any rate, the finding is not so manifestly against the weight of evidence as to require us to disturb the verdict. Nor do we perceive any objection to the instructions given, or error in the modifications made before they were given. The judgment of the court is therefore affirmed.

*Judgment affirmed.*